UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

STEVEN G. NEWMAN, EXECUTOR UNDER THE WILL OF MICHAEL GREEN, DECEASED

    Plaintiff,

v.

GENERAL MOTORS CORPORATION,

    Defendant.

Civil Action No. 02-135 (KSH)

**OPINION**

**KATHARINE S. HAYDEN, U.S.D.J.**

**I.  INTRODUCTION**

Defendant General Motors Corporation ("GM") appeals Magistrate Judge Patty Shwartz's order [D.E. # 126], pursuant to Local Civil Rule 72(c)(1), granting in part and denying in part its motion to seal a number of documents related to previous discovery rulings. Specifically, GM requests the Court to reverse Judge Shwartz's order directing GM to provide to plaintiff Steven Newman ("Newman") unredacted versions of: (1) transcripts of hearings held before Judge Shwartz related to GM's *in limine* motions regarding privilege and work product issues; (2) Judge Shwartz's opinion dated March 24, 2005 [D.E. # 60], which issued discovery rulings as a result of those hearings; and (3) this Court's affirming opinion dated March 30, 2006 [D.E. # 89]. Newman has filed his own motion to strike a certification [D.E. # 142] submitted by one of GM's legal experts, which the Court will consider here as well.

1

## II.  BACKGROUND & PROCEDURAL POSTURE

### A.  Background

The facts giving rise to this long-running dispute are well known to the parties; in the Court's earlier opinion [D.E. # 89], a full exposition of the facts and procedural history appears. Here, a brief synopsis will suffice.  Newman is the executor of the estate of Michael Green, now deceased, who suffered catastrophic injuries in an automobile accident while operating a 1986 Chevrolet Camaro manufactured by GM.  Green, who has since died, filed suit against GM in state court alleging a defective product design (the "*Green*" case).  After a jury verdict, appeal, and subsequent remittitur, Green received approximately $14 million in judgment.  During the appeal, Green's counsel learned about the existence of certain documents in a similar case in Tennessee, which allegedly prove that GM concealed the testing, analysis, and ultimate rejection of an alternative design during the *Green* case.  Newman, who is the executor under Green's will, filed a new action against GM in state court, alleging fraudulent concealment of evidence, negligent concealment of evidence, and a violation of the New Jersey Racketeering Influenced and Corrupt Organizations Act.  GM removed to this Court on diversity grounds [D.E. #1].

### B.  The Present Appeal

The procedural facts underlying the present appeal are mostly undisputed.[1]  During discovery, Newman requested production of information and documents concerning communications between GM and its counsel regarding the *Green* case.  GM objected on the grounds of attorney-client privilege and attorney work product.  Magistrate Judge Shwartz

---

[1] The only factual dispute relevant to the appeal appears to be whether GM turned over (pursuant to an order of the Third Circuit) a redacted or unredacted version of this Court's March 30, 2006 opinion [D.E. # 89]. The Court will assume as true GM's contention that it produced only a redacted version, and thus the sealing issue with respect to that opinion remains ripe. *See* Pl. Br. at 2; Def. Rep. Br. at 2.

conducted extensive hearings, and ruled in a thorough written opinion that the crime-fraud exception applied to pierce both privileges with respect to certain documents [D.E. # 60]. Judge Shwartz therefore ordered the production of approximately 250 documents (and also ruled some documents to remain privileged) [D.E. # 62]. Because the information contained in the opinion concerned purportedly confidential information, the unredacted opinion was sealed pending appeal [D.E. # 62]. GM appealed to this Court, which affirmed, also in a redacted opinion [D.E. # 88]. The Third Circuit affirmed as well. *See Newman v. Gen. Motors. Corp.*, 228 Fed. App'x 245 (3d Cir. 2007).

Upon affirmance by the Third Circuit, Judge Shwartz issued the order to which GM now objects [D.E. # 126]. For the reasons in her oral opinion (and discussed more fully below), Judge Shwartz denied GM's motion to seal the opinions and related transcripts.[2] Now, back on appeal, GM in essence argues that Judge Shwartz erred because the unredacted opinions and transcripts give insight into its legal strategy in this case, and should thus remain protected by the work product doctrine.

In support of its appeal, GM proffers the certification of Jamie S. Gorelick ("Gorelick Certification"), an expert in the "importance of maintaining confidentiality for work product revealed in *ex parte*, *in camera* hearings." GM's Brief in Support of Magistrate Appeal ("Def. Br.") at 1. Newman has filed a motion to strike the Gorelick Certification as improper legal argument under the local rules of this district [D.E. # 142].

---

[2] The order grants GM's motion to the extent it keeps intact the prior ruling that certain portions of the documents should remain redacted as privileged. Newman has not appealed that portion of the order. *See* Pl. Br. at 1.

### III. DISCUSSION

#### A. Motion to Seal

##### 1. Standard of Review

A party may appeal a non-dispositive order of a magistrate judge pursuant to Local Civil Rule 72.1(c)(1), and bears the burden of proving that the magistrate judge's findings are clearly erroneous or contrary to law.  L. Civ. R. 72.1(c)(1)(A); *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1113 (3d Cir. 1986); *Marks v. Struble*, 347 F. Supp. 2d 136, 149 (D.N.J. 2004); *Exxon Corp. v. Halcon Shipping Co.*, 156 F.R.D. 589, 591 (D.N.J. 1994).  A district court conducts a *de novo* review of the magistrate court's legal conclusions and examines its factual findings for clear error.  *Doe v. Hartford Life and Accident Ins. Co.*, 237 F.R.D. 545, 547-48 (D.N.J. 2006).

A strong and well-settled presumption against sealing records of judicial proceedings exists in this district (and indeed, in courts throughout the nation)—Local Civil Rule 5.3(a)(4) instructs that " [s]ubject to this rule and to state or other law, all materials and judicial proceedings are matters of public record and shall not be sealed."  L. Civ. R. 5.3(a)(4).  The rule encompasses both common law right-of-access principles and First Amendment considerations.  *See, e.g., Nixon v. Warner Commc'ns., Inc.*, 435 U.S. 589, 602 (1978); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984).  To overcome this presumption upon a motion to seal, a party must describe: (1) the nature of the materials or proceedings at issue; (2) the clearly defined and serious injury that would result if the relief sough is not granted; and (3) the legitimate private or public interests which warrant the relief sought; and (4) why a less restrictive alternative to the relief sought is not available.  L. Civ. R. 5.3(c)(2); *Littlejohn v. BIC*

*Corp.*, 851 F.2d 673, 678 (3d Cir. 1988); *Vista India, Inc. v. RAAGA, L.L.C.*, No. 07-1262, 2008 U.S. Dist. LEXIS 24454, at *8 (D.N.J. Mar. 27, 2008).

    2. Magistrate Judge Shwartz's Opinion

In her oral opinion, Magistrate Judge Shwartz identified the following three injuries GM insists it would suffer should the unredacted materials be unsealed: (1) exposure of GM's trial strategy for litigating the substantive claim of discovery fraud, thus providing Newman with an unfair litigation advantage; (2) disclosure of work product concerning client privileges regarding matters unrelated to the alleged fraud perpetrated by GM; and (3) injury to GM's reputation as a result of possible public misperception of the preliminary finding that GM engaged in discovery fraud. Magistrate Opinion ("Mag. Op.") at 4:23-5:9.[3] She then discussed the public interest concerns embodied by the presumption against the sealing of judicial proceedings before turning to the documents now at issue. Mag. Op. at 8-14.

After emphasizing that GM did not "assert[] that this material in any way constitute[s] trade secrets or proprietary information[,] [but] . . . claim[s] that its presentation of testimony and arguments somehow constitutes Rule 26 work product," Mag. Op. at 15:12-17, Judge Shwartz found several reasons why the material does not warrant protection under Local Civil Rule 5.3(c). Mag. Op. at 17:9-23. First, GM divulged the information to the court, and thus it lost its protected status as internal litigation strategy. *Id*. Second, Judge Shwartz found that GM had failed to provide sufficient legal authority to override constitutional right-of-access concerns merely to protect GM's litigation defense a little bit longer. Mag. Op. at 18:6-10. Third, she ruled that the information at issue was not of the type that is intended to be kept from the public (such as competitive business information or privileged communications) because it would

---

[3] A complete copy of Judge Shwartz's opinion is attached as Exhibit A to GM's notice of appeal [D.E. # 134].

become a matter of public record at some point during the litigation anyway. Mag. Op. at 18:22-19:17. Fourth, Judge Shwartz found that because the proceedings at issue were only conducted *ex parte* to protect privileges that might be found on appeal, once her opinion was affirmed by both this Court and the Third Circuit, the need for a seal on the legal proceedings vanished. Mag. Op. at 19:7-4. Fifth, she ruled that the "public has a right to know what evidence and arguments were presented to the Court that led to its decision," as well as the "evidence relating to activities that occurred in connection with another judicial proceeding." Mag. Op. at 20:5-7; 20:15-16. Sixth, she ruled that the alleged reputational injury to GM was insufficient to grant its motion to seal. Mag. Op. at 20:23-22:1. Seventh, Judge Shwartz found that any real injury as a result of alleged insight Newman might gain into GM's litigation strategy was minimal compared to the public interest factors supporting open access. Mag. Op. at 22:2-11.

Judge Shwartz concluded by ruling that the specific portions of the documents for which GM moved to remain sealed simply do not warrant protection:

> [T]he Court has conducted a review of each of the items that the defendant seeks to seal, and none of it constitutes material that should be sealed. They've asked to seal things that deal with scheduling and witness availability, make references to publicly filed documents, or involve discussions of the very documents that the Court ordered to be unsealed. The Court could make individual findings as to each of these requests as to why the Court concludes that none of it merits sealing, but the specific reasons that have been articulated explain the Court's view concerning the lack of any reason to seal anything other [than] that which has been the subject of a continued affirmance of a privilege.

Mag. Op. at 23:17-24:6.

### 3. GM's Objections

On appeal, GM raises three principal arguments. First, it claims that unsealing of the opinions and transcripts would abrogate its right to keep internal litigation strategies and work

product confidential. Def. Br. at 7. In support of that assertion, GM argues that because there has been no Rule 26(b)(3) finding that overcomes the work product privilege, it cannot be required to provide the unredacted documents containing its internal litigation strategies. Def. Br. at 8. It also calls error to Judge Shwartz's purported application of the waiver doctrine. Def. Br. at 10-17.

Second, GM argues that requiring it to disclose its work product through the unsealing of the opinions and transcripts would implicate due process concerns because fundamentally unfair proceedings would result. Def. Br. at 18.

Finally, GM argues that the least restrictive method to protect its work product is to order the unsealing of only the redacted versions of the opinions and transcripts. Def. Br. at 24.

    4. <u>Analysis</u>

Having conducted an independent review and after considering the parties' arguments on appeal, the Court finds no error in Judge Shwartz's opinion.

GM's first and central argument is that the materials at issue here constitute Rule 26(b)(3) work product, and that Judge Shwartz made no finding under the rule that justifies piercing GM's work product privilege. Def. Br. at 7-10. Rule 26(b) of the Federal Rules of Civil Procedure deals with the scope and limits of discovery. Subparagraph 26(b)(3), entitled "Trial Preparation: Materials," states in pertinent part:

> (A) *Documents and Tangible Things*. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . . . But, subject to Rule 26(b)(4), those materials may be discovered if:
>
>> (i) They are otherwise discoverable under Rule 26(b)(1); and

> > (ii) The party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> (B) *Protection Against Disclosure.* If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Fed. R. Civ. P. 26(b)(3) (emphasis in original). GM therefore argues that because "[t]here is no doubt these opinions, theories, and assessments of [its] counsel—notwithstanding their presentation to the Court *in camera*—are work product," only upon a showing of "substantial need of the materials" and the inability "without undue hardship to obtain the substantial equivalent materials," should the documents be unsealed. Def. Br. at 8-9 (quoting Fed. R. Civ. P. 26(b)(3)). This presupposes, however, that Rule 26(b) provides the doctrinal framework for unsealing transcripts of judicial proceedings and resulting opinions that might contain putative "work product." But the rule contemplates only compelled disclosure—it literally proscribes (absent exceptional circumstances) only the **production** of "documents and tangible things that *are prepared in anticipation of litigation or for trial by or for another party* . . . . Fed. R. Civ. P. 26(b)(3) (emphasis added). By its terms, the rule does not relate to the unsealing of transcripts and opinions.

In *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 662 (3d Cir. 2003), the Third Circuit recently stated that *Hickman v. Taylor*, 329 U.S. 496 (1947), a seminal case on the work product doctrine, "continues to furnish protection for work product within its definition that is not embodied in tangible form." This statement, however, does not mean that anything inside an attorney's head related to the litigation may remain secret until the trial bell rings. It merely stands for the proposition that Rule 26(b)(3) affords insulation from attempts to "circumvent[]the

work product doctrine by attempting to elicit an attorney's thought processes through depositions or interrogatories," and not just through a request for documents. 6 J. Moore, *Moore's Federal Practice*, § 26.70[2][c]; *see also Sporck v. Peil*, 759 F.2d 312, 315-316 (3d Cir. 1985) (identification of documents would reveal counsel's mental impressions).

A very different question is presented here. The work product doctrine does not breathe life into Rule 26(b)(3) where, as here, discovery requests are not at issue. GM offers no authority (and the Court can find none) supporting the argument that the discovery privilege for work product supersedes the inquiry the Court must perform under the different context governed by Local Rule 5.3(c). Rule 26(b)(3) does not concern judicial opinions or transcripts of judicial proceedings because, even if they contain attorneys' mental impressions that otherwise would be protected under the work product doctrine, they are not being sought for discovery in this case.

The Court therefore agrees with Newman that by invoking Rule 26(b)(3), GM raises a red herring. The rule concerns discovery, not orders to seal matters related to judicial proceedings. GM argues that "core' or 'opinion' work product that encompasses 'mental impressions, conclusions, opinion, of legal theories of an attorney or other representative of a party concerning the litigation' is 'generally afforded near absolute protection from *discovery*.'" Def. Br. at 9 (quoting *Cendant Corp.*, 343 F.3d at 663) (emphasis added). While this is certainly true, a corollary to GM's own statement is that discovery of the work product must be at issue to trigger the protections. Again, discovery is not an issue here. GM's argument that Judge Shwartz erred as to the law of waiver of a party's Rule 26(b)(3) protection, *see* Def. Br. at 10-18, is therefore inapposite because the rule does not afford GM protection here in the first place. Moreover, Judge Shwartz made the findings regarding "waiver" as part of the balancing of

9

interests required by Local Civil Rule 5.3(c), and not simply as an "implicit finding" of an all-out surrender of the work-product protection granted by the federal discovery rules. Def. Br. at 15.

GM cites several cases to dissuade the Court from focusing on Local Civil Rule 5.3(c) instead of the work product doctrine. First, it cites *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157 (3d Cir. 1993) for the proposition that "[t]he public does not have a presumed right of access with respect to any *in camera* materials—privileged or not—produced in connection with a pre-trial discovery motion." Def. Br. at 20. In *Leucadia*, the Third Circuit considered whether the district court erred in denying an intervenor's request to modify a previous sealing order limiting public access to discovery materials containing the parties' trade secrets. *See* Def. Br. at 20; Def. Rep. Br. at 4. The Court went on to hold that "there is a presumptive right to public access to all material filed in connection with non-discovery pretrial motions . . . but no such right as to discovery motions and their supporting documents." *Id.* at 165.

Here, of course, the Court is not faced with several of the issues with which the *Leucadia* Court was presented. It is not faced with concerns of commercial trade secrets, but with work product. It is not faced with a discovery motion, which was the focal point in *Leucadia*, but a motion by GM to unseal judicial materials. And most significantly, it is not faced with "material filed in connection with discovery motions and their supporting documents," *id.*; rather, the Court's focus is on judicial opinions and transcripts related to hearings before the magistrate. To be sure, the underlying hearings concerned discovery privileges. But the resulting transcripts and opinions are not the type of material with which *Leucadia* was concerned. There is a fundamental difference between a presumption concerning discovery documents submitted by the parties (the issue in *Leucadia*) and the actual product generated by the Court (which

*Leucadia* did not reach). Likewise, GM's reference to *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984) is unpersuasive. That case also concerned the parties' discovery documents (such as depositions and interrogatories), not transcripts or opinions produced by the Court. *See* Def. Br. at 20.

*United States v. Cuthbertson*, 651 F.2d 189, 198 (3d Cir. 1981) is also of no assistance to GM. *See* Def. Br. at 16; Def. Rep. Br. at 4-5, 9-10. That case, a criminal case involving *in camera* review of certain documents to determine their possible exculpatory use under *Brady v. Maryland*, 373 U.S. 83 (1963), and the subpoena power granted by Fed. R. Crim. P. 17(c), did not concern: (1) attorney work product, but instead whether certain materials were subject to a reporter's privilege; (2) anything related to transcripts of the legal proceedings or resulting opinions; or (3) anything related to the sealing of such materials. *Id.*

In his concurring opinion in *Cuthbertson*, Chief Judge Seitz discussed the critical importance a district court must place upon maintaining confidentiality of purportedly privileged material when reviewing material *in camera*.

> I believe that a district court should consider in camera material to be in its possession for a limited purpose only. Therefore, ordinarily a district court should not consider the merits of the asserted privilege, much less decide to disclose the material, until after it has determined that the party seeking disclosure would have the right to compel production of the material if it were still in the hands of the person opposing disclosure. Otherwise, a device intended to protect the person opposing disclosure could be converted into a device by which that person must disclose material that could not have been obtained from it directly. This would not only undermine the integrity of the in camera device but also would greatly expand the discovery rights of criminal defendants.

*Id.* at 198-99 (Seitz, C.J., concurring). But this statement has nothing to do with the type of materials at issue; just because *in camera* review generally warrants strong protection of the

11

materials being reviewed does mean that a court must robotically insulate its own judicial output (i.e., transcripts and opinions).  Moreover, Chief Judge Seitz was referring to the district court's error in disclosing *Brady* material—*sua sponte*, straight from the court to the defendant—under the Due Process Clause when it was unclear whether *Brady* even obligated the prosecution to do so at all.  Id. at 99.  This is so far from the point advanced here that it merits no further discussion.

In *In re Vitamins Antitrust Litig.*, 357 F. Supp. 2d 50, 51 (D.D.C. 2004), also cited by GM, the court stated that when "pleadings, motions, briefs, other documents, or testimony refer to trade secrets, work product, or settlement negotiations, the interests of the clients and the public in maintaining their confidentiality may trump another public interest that is at stake: access to materials submitted during litigation or judicial resolution of a dispute."  *See* Def. Rep. Br. at 5.  In the very next paragraph, however, the court continued:

> The calculus changes, however, when the documents at issue are not crafted by the parties[,] but are orders and opinions issued by the court or documents used by the court in shaping its analysis. At that point, the public does not only have an *interest* in what the court decides and why it makes its decisions; it also has a *right* to know that information. Therefore, any orders or opinions I issue will unquestionably be on the public record.

*Id.* at 51-52 (emphasis in original).

The Court is unpersuaded by the other authority GM relies on, which are either cases that are factually or legally distinguishable, or they are equivocal, calling for a balancing of interests—much like the analysis Judge Shwartz performed under Local Civil Rule 5.3(c). *See Nixon*, 435 U.S. at 602; *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653 (3d Cir. 1991).  The opinions and transcripts are not work product in and of themselves; that they might contain mental impressions and litigation strategies of GM's counsel for this litigation

12

does not concern Rule 26(b)(3) given the present posture of the case. To be sure, any risk posed by premature dissemination of GM's trial strategy is a consideration to be undertaken in the sealing analysis. But it does not end the inquiry. Instead, Local Civil Rule 5.3(c) alone provides the proper framework for resolving the appeal.

Turning now to the balancing of interests required by Local Civil Rule 5.3(c) and the common law, the Court agrees with Judge Shwartz that GM has not met its burden to defeat the "pervasive common law right 'to inspect and copy public records and documents, including judicial records and documents.'" *Leucadia*, 998 F.2d at 161 (quoting *United States v. Criden*, 648 F.2d 814, 819 (3d Cir. 1981)).

First, Judge Shwartz correctly recognized that GM has cited no case law supporting the override of presumptive constitutional and common law protections, especially given the fact that GM elected to defend (albeit unsuccessfully) its privilege assertions. Furthermore, the Court is unpersuaded that any private interests that would inure to GM through sealing of the materials overcome the weighty interests embodied by the presumption of open access to judicial records. The injuries asserted by GM—general allusions to disclosure of its litigation strategy and reputational harm based on the risk of public miscomprehension of the materials—are not sufficient to trump the interest in open public access. With respect to GM's asserted reputational harm, Judge Shwartz is quite correct that: (1) if reputational harm was sufficient to seal judicial records, then a criminal defendant could likewise obtain sealing orders to protect his or her reputation until commencement of trial; and (2) there is only a miniscule risk that the public might misperceive the preliminary findings regarding alleged discovery fraud. As to GM's concerns about losing its litigation edge, the Court concurs with Judge Shwartz that any "small

insight" Newman gains from unsealing the materials "does not outweigh the public's right to access to the judicial proceedings." Mag. Op. at 22.

The Court agrees with Judge Shwartz that the purported work product, which will be revealed in short order during dispositive motion practice or trial, does not generate the same concerns as do trade secrets, national security concerns, and other privileged communications intended to remain undisclosed for all time. The Court further agrees with Judge Shwartz that the public interest in knowing what evidence and arguments were presented to the magistrate court—the alleged fraud that occurred during the *Green* case, and particularly the evidence and arguments made in that case—tips the balance in favor of disclosure. Furthermore, the only reason the documents were filed under seal (and remained so pending appeal) in the first place was to protect the attorney-client and work product privileges that GM had asserted. Those issues were previously determined by Judge Shwartz, and were thereafter affirmed by this Court and the Third Circuit. Thus, the rationale for sealing the submitted documents no longer exists. Finally, like Judge Shwartz, the Court has reviewed the materials (particularly the hearing transcripts) GM requests to remain sealed; it remains unconvinced that undue harm will result from unsealing.

Nor does unsealing of the materials run afoul of the Constitution. GM asserts that should its trial tactics contained in the transcripts and opinions be unsealed, Newman would be given the "gift . . . of a roadmap for his case that has been judicially previewed," and as a result GM's right to a fair trial would be violated. Def. Br. at 21. GM argues that

> When a jury finds in favor of GM at trial—and determines there was no crime [or] fraud—what will GM have protected, if its work product has already been produced in discovery? If the Court orders GM's work product to be produced in discovery, how will

>GM put this genie back in the bottle after trial? It cannot, of course, and any victory at trial will be at best pyrrhic.

Def. Br. at 21. The Court finds this argument perplexing. The injury GM is most concerned about here is losing at trial. Why, then, would it be worried—after victory—that its unsuccessful adversary had early access to the litigation strategy that ultimately prevailed anyway? This argument demonstrates the insufficiency of both the injuries alleged and GM's due process argument. The constitutional and common law protections embodied by Local Rule 5.3(c) and the right-of-access doctrine protect the public's and litigants' constitutional rights; they do not hinder them. Furthermore, the Court finds absolutely no support in the record for GM's argument that unsealing the materials here will somehow deprive either Judge Shwartz or this Court of its neutrality moving forward. *See* Def. Br. at 21-23. Due process is not offended by unsealing the documents.

In sum, GM has failed to meet its burden under Local Civil Rule 5.3(c) of establishing a clearly defined and serious injury, as well as sufficient public or private interests justifying continued sealing of the transcripts and opinions. Because the Court finds these two prongs deficient, it will not address the remedial requirement imposed by the local rule (whether a less restrictive alternative to sealing is available). Judge Shwartz's cogent and thorough analysis need not be scrutinized any further; the Court agrees with it in full and affirms.[4]

---

[4] In coda, the Court notes that on December 3, 2008, the New Jersey Appellate Division issued an opinion unsealing the record in a highly publicized case in which a two-year old girl was rendered a quadriplegic in an automobile accident with a drunken football fan returning from a game at Giants Stadium. *See Verni v. Lanzaro*, No. A-1816-07, slip. op. at 2-3 (N.J. Super. Ct. App. Div. Dec. 3, 2008). After a nine-figure jury verdict was vacated on appeal, *see Verni ex rel Burstein v. Harry M. Stevens*, 387 N.J. Super. 160 (App. Div. 2006), *certif. denied*, 189 N.J. 429 (2007), the parties executed a settlement filed under seal and obtained a court order sealing the entire record as well. Id. at 6. The asserted purpose for sealing the record (particularly the settlement agreement) was to prevent the child's estranged father from misappropriating settlement funds as he had done with settlements executed earlier in the litigation. *Id.* at 4-6. A public interest group intervened and filed a motion to unseal the record, which the trial court denied. *Id.* The Appellate Division reversed, relying on the same First Amendment and common law right-of-access principles discussed herein and by Judge Shwartz. *Id.* at 17-18. It found that the risk of the girl's father

### B. Motion to Strike

In resolving the appeal, the Court reviewed and considered the averments in the Gorelick Certification, having determined that the arguments against considering it were not persuasive. For the record, then, Newman's motion to strike is denied. Local Civil Rule 7.2(a) states:

> Affidavits shall be restricted to statements of fact within the personal knowledge of the affiant. Argument of the facts and the law shall not be contained in affidavits. Legal arguments and summations in affidavits will be disregarded by the Court and may subject the affiant to appropriate censure, sanctions[,] or both.

L. Civ. R. 7.2(a). In denying Newman's motion, the Court agrees that certifications must adhere to the same strictures as affidavits. *See Penn v. Wal-Mart Stores, Inc.*, 116 F. Supp. 2d 557, 560 n.3 (D.N.J. 2000) (citing *Assisted Living Assoc. v. Moorestown Twp.*, 996 F. Supp. 409, 442 (D.N.J. 1998)). Furthermore, the cases are legion in this district "reflect[ing] the strongly held position . . . that there should be a clear and inviolable line drawn between straightforward factual submissions on one hand and legal and factual argument more appropriately reserved for a brief on the other hand." L. Civ. R. Cmt. 2. *See also Hutchins v. UPS*, 197 Fed. App'x 152, 158-59 (3d Cir. 2006) (affirming district court's striking of declaration that was "extremely argumentative and include[d] various instances of legal analysis and factual argumentation—a clear violation of Rule 7.2(a)"); *Holster v. McMaster-Carr Supply Co.*, No. 04-1791, 2006 U.S. Dist. LEXIS 72321, at *38 n.9 (D.N.J. Oct. 3, 2006) ("[L]aw shall not be asserted in affidavits

---

learning of the settlement amount did not outweigh the strong public interest in public access to the court records. It "reiterate[d] [that] the presumption of openness to court proceedings requires more than a passing nod. Open access is the lens through which the public views our government institutions. Here, plaintiffs have not demonstrated that their desire for privacy overcomes the strong presumption of access to court records." *Id.* While *Verni* is obviously not binding on this Court, the Court nonetheless finds it highly persuasive. Where the danger of a catastrophically injured little girl having her settlement money misappropriated does not justify sealing court records, the Court is similarly unconvinced that the relatively minute risk to GM's trial strategy rationalizes an override to the presumption of open access.

pursuant to L. Civ. R. 7.2(a). . . . [T]hose portions of Plaintiff's submitted affidavits where law was asserted were not contemplated by the Court.").

But here the Court does not find the certification provided by Gorelick to be so argumentative as to be improper. The Court recognizes that certain portions of the certification contain what may be characterized as "argument." To any such extent, the Court considers Newman's complaints in making a credibility assessment of the certification rather than striking it outright. Gorelick has the expertise to opine on *in camera* proceedings, having served, among other positions, as Deputy Attorney General of the United States. In dealing with the subject matter for which GM posits her certification, she is permitted a certain amount of leeway. Where, as here, a genuine public policy issue concerning court procedure and protection of ideas is in dispute, the "clear and inviolable line" between presentation of facts and legal argument is inherently blurred. The Court is satisfied that the Gorelick Certification meets the strictures of Local Civil Rule 7.2(a).

In any case, as discussed above, the Court remains unconvinced that the Gorelick Certification (together with GM's other arguments) hurdles the significant barrier established by Local Civil Rule 5.3(a). It therefore leaves undisturbed its conclusion that Judge Shwartz correctly decided the motion to seal.

## IV.   CONCLUSION

For the foregoing reasons, Newman's motion to strike the Gorelick Certification is denied. The Court finds, however, that the October 24, 2007 order issued by Magistrate Judge Shwartz [D.E. # 124] is neither clearly erroneous nor contrary to law. It therefore affirms. An appropriate Order will accompany this Opinion.

/s/  Katharine S. Hayden

KATHARINE S. HAYDEN
UNITED STATES DISTRICT JUDGE